[Crim. No. 2820.   First Dist., Div. Two.   July 13, 1953.]

THE PEOPLE, Respondent, v. JOHN P. CROZIER,
Appellant.

Robert C. Taylor for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

NOURSE, P. J.—The defendant-appellant was tried to a jury on an information charging first degree murder. He answered and pleaded not guilty and not guilty by reason of insanity. The jury found him guilty as charged, with a recommendation for clemency.

Without a demand on his part, but on suggestion of the trial court, defendant was first tried on the issue of his sanity at the time set for trial. He was duly found insane and was committed to a state hospital where he was held until his return for trial on a certification of recovery. He then withdrew his plea of insanity and stood trial to the jury on the information charging murder. From the ensuing judgment on the verdict, with a recommendation of life imprison-

ment, and from the order denying his motion for a new trial this appeal was taken. Counsel now appearing for appellant did not participate in the trial. He was assigned by this court to prosecute the appeal and we appreciate his able presentation of the points involved.

The story begins with the night of January 13, 1922, when a San Francisco police officer found the dead body of a woman lying on her bed with a gag in her mouth, a cloth around her neck, bound hand and foot, and with numerous contusions on her throat. The rooms in her apartment had been ransacked giving all the indications of a burglary.

Twenty-eight years later the defendant was arrested in the town of Darien, Connecticut, on a charge of drunkenness and larceny. He gave the lieutenant of police a written confession of the murder in San Francisco on January 13, 1922. This confession was shown to him on the following morning and he stated that it was true. Later in the same day he gave the Darien police another written statement confessing to the same crime. No promises or threats were made. He was advised that he was entitled to counsel but he rejected the offer. Both confessions were admitted in evidence at the trial as well as the oral confession made to the San Francisco police officer at the time of the arrest, and they constitute appellant's main attack on the judgment.

At this point it is proper to quote at length from the first confession as it unmistakably discloses that defendant was then clear of mind, and also because it discloses many facts relative to the murder which were then unknown to all the arresting officers. We quote: "I have been arrested for intoxication and larceny, burglary, etc. most all my life. I wish at this time to clear my conscious [sic] in regards to the murder that I committed in San Francisco, California on January 13, 1922, which was on a Friday. I was boarding at the rooming house conducted by Mrs. Elizabeth Platt at 1550 O'Farrell Street, San Francisco, California and on the above date, January 13, 1922, while she was showing one Raymond Burleigh, alias Raymond Conklin and Andy Schrick both from Chicago, Illinois, graduates of Joliet Prison. While she was showing the room I threw my arms about her neck and she started to scream and Burleigh or Conklin put a rag into her mouth to stop her noise. She went limp and we put her on the bed and then searched the house for money and I don't remember finding any money but we did take two suits of mens clothes which were large size, about a 44 and one

black suit case and one black handbag and a camera. We all left the house together and went to Oakland, California, where we pawned the camera in a pawn shop a short distance from the ferry. I attempted to pawn the suits in San Pedro, California, but the pawn broker seemed to be wise and left the store to change a twenty dollar bill and I saw a man come in that looked like a detective and I beat it out of the store leaving the clothing behind me. Mrs. Platt was about 59 years of age and on the day we killed her she was wearing a gingham dress, blue and white, mostly blue and was wearing white stockings at the time. At the time of the murder I was registered in the house book as either Frank or John Crosby. I had been there about three days in all. I remember some painters painting the house next door on a ladder. I was never picked up for this crime or questioned about it and it has been on my mind all these years and I realize that I have been in mental institutions many times, but the above facts are true and not a figment of my imagination or am I mentally unbalanced at this time and a check on these facts will prove it to be the truth and I stand ready to so state to any authorized police officer. I wish to further state that on the date of November 13 to 19th, 1942 while I was locked up for intoxication at Sacramento, California, under the name of Frank Buchanan I killed a Mexican who was locked up with me and several others, his name I don't remember. He was drunk and was going to strike me with his fists when I stuck him in the stomach with my knife. I found they had taken him out during the night and they threw me out in the morning. I have read the above statement and declare it to be the truth so help me God.''

During his incarceration in Connecticut the defendant made two other confessions of the same import. These were all admitted in evidence over defendant's objection that he was incompetent at the time they were made. Expert testimony was taken showing his competency, but the best evidence of his competency is in the statements themselves as they show unmistakably that they were made by one in possession of his mental faculties since they disclose facts and details of the murder which were within his knowledge only and which could not have been suggested to him by the arresting officers. For these reasons there is no ground for the argument that the evidence is insufficient to support the verdict.

Appellant assigns error in that these confessions were admitted in evidence before the corpus delicti had been proved.

Assuming this to be so, the order of proof is within the discretion of the trial court and a judgment will not be reversed merely because the customary order has not been followed. *People* v. *Seymour*, 54 Cal.App.2d 266, 275 [128 P.2d 726]; *People* v. *Mehaffey*, 32 Cal.2d 535, 547 [197 P.2d 12].

█ It is argued that the death certificate showing the time, place and cause of death of the victim of the assault was improperly admitted in evidence. The certificate was in the standard form, duly authenticated, and was prima facie evidence of the facts stated. (Health & Saf. Code, § 10551.)

█ Appellant criticizes a lengthy and involved hypothetical question put to the medical expert called by the People as including some facts not in evidence. The error, if one occurred, was not prejudicial. A simple reading of the confessions with special attention to the great number of details given therein (matters which at the time were wholly in the mind of the appellant, but which subsequent investigation verified) could leave no doubt in the minds of the jury that appellant was correctly reciting matters then known only to himself.

█ Misconduct is assigned to the district attorney in stating that he had on the way from New York commitment papers showing appellant's conviction for burglary in that state. The criticism is rather technical since appellant contended that under the New York statute the offense was known as "petty larceny and unlawful. entry." "Unlawful. entry" is known in this state as burglary and it does not appear that the district attorney was guilty of misconduct in referring to the New York crime as "burglary." However no objection was made to the statement and no request was made for an instruction to disregard it. It is not reversible error.

█ Misconduct is also assigned to the reference in the argument of the district attorney to appellant's long criminal record. The statement was tied strictly to the evidence of prior crimes confessed by the appellant or otherwise put in evidence. It does not constitute error. Other assignments of misconduct do not require special treatment. Furthermore no objection was made to any of these statements; no one of them was of such a nature that an objection or a request for an instruction would have been prejudicial. This settles the questions on appeal.

Appellant requested the court to give an instruction on the effect an abnormal mental or alcoholic condition might

have on the question of his mental capacity to make a true confession. The instruction was not given in the words offered but the court did instruct the jury to take into consideration all the facts proved "including the physical and mental condition of the defendant, if a confession were made, including any such circumstances as I have mentioned, ought to be construed by you in determining whether or not the confession was voluntary."

■ Criticism of the trial court's refusal to give appellant's proposed instruction covering a case of circumstantial evidence is not sound. It related to cases based wholly on circumstantial evidence. Here the state rested on direct evidence and particularly on appellant's confessions. In such a case the instruction need not be given. *People* v. *Nunn*, 65 Cal.App.2d 188, 193 [150 P.2d 476].

■ Finally appellant complains of the rejection of his proposed instruction relating to the homicide in Sacramento County. Evidence of this crime first came into the record through appellant's confessions. Further evidence of the time and circumstances of the homicide was offered from the records of Sacramento County to substantiate appellant's confessions and to prove the clarity of his mind at the time the confessions were made. This is not a case of proof of an "unrelated" crime which is the case of the authorities cited by appellant. If he had proposed an instruction limiting the evidence to its true purpose we have little doubt that such an instruction would have been given. The proposed instruction went beyond the issues and was properly rejected.

Judgment and order affirmed.

Dooling, J., concurred.

A petition for a rehearing was denied July 28, 1953, and appellant's petition for a hearing by the Supreme Court was denied August 6, 1953.