[Crim. No. 5322.   Second Dist. Div. Three.   June 20, 1955.]

THE PEOPLE, Respondent, v. CLAUDELL FORD et al., Appellants.

Earl C. Broady and Rufus W. Johnson for Appellants.

Edmund G. Brown, Attorney General, and Marvin Gross, Deputy Attorney General, for Respondent.

VALLÉE, J.—Ford and Leakes were charged, with one Randolph, in three counts with kidnapping for the purpose of robbery, robbery, and burglary. Ford and Leakes were found guilty by a jury as charged in each count. Randolph was acquitted on all counts. Ford and Leakes, referred to as defendants, appeal from the judgment and the order denying their motions for a new trial.

Defendants' specifications of error are: 1. Venue was not established. 2. The evidence was insufficient to sustain the convictions. 3. The court erred in refusing to give their requested cautionary instruction with respect to oral admissions of a defendant.

The Clock Drive-In restaurant was located in Bell. In the early morning of March 15, 1954, two janitors were on the premises. About 5:30 that morning three colored men entered the restaurant. At least two of them were armed with revolvers. Each wore a baseball-type cap and had his face covered with a handkerchief. They tied up the two janitors and then removed a safe weighing about 1,000 pounds and containing about $4,700 from the building. Platt, a milkman, arrived at the restaurant on his regular run. One of the men with a gun ordered him to assist in loading the safe onto a black panel truck parked at the rear entrance. As the safe, mounted on a dolly, was skidded across the back of the truck, the dolly left skid marks. There was a Cadillac emblem affixed to the rear bumper of the truck. The men put Platt in the boiler room and left with the truck about 5:45 a.m. Platt released the janitors and telephoned the police. When officers arrived they found a torn part of a temporary license on the ground in tracks left by the tires of the truck.

At 7 a.m. that morning defendant Ford, wearing a baseball-type cap, was apprehended by the police as he was driving the

panel truck in a westerly direction on 92d Street near its intersection with Hoover Street. He had in his pocket a handkerchief which was identified by one of the janitors as the one which covered the face of one of the three robbers. The officers asked Ford who was with him "on the burglary." Ford replied he could not tell "because he had certain principles and he didn't go that route." Ford told two officers he would return all the money that was taken plus $1,500 if they would turn him loose.

Defendant Leakes was arrested just after midnight on March 16. He had $450 on him and appeared to be intoxicated. He told the officers he got the money "from scratching," which 'means "playing the horses." He was kept in custody, and on the 18th was taken by the officers to his apartment which was unlocked. The officers found two money wrappers in a wastebasket in the apartment which were identified as wrappers which had been filled with money and placed in the Clock Drive-In safe. They asked Leakes where he had obtained the wrappers. He refused to answer. An officer asked him why he did not answer. He replied that "if he answered that question he would get 15 years for it."

Venue was established. ▇▇▇ Venue is a question of fact which the prosecution must prove by a preponderance of the evidence, not beyond a reasonable doubt. (*People* v. *Megladdery,* 40 Cal.App.2d 748, 764 [106 P.2d 84].) Platt testified that on March 15, 1954, the Clock Drive-In was located at 7000 Atlantic Boulevard in Bell, California. There was no direct evidence that Bell, California, is in the County of Los Angeles, in which county defendants were informed against, tried, and sentenced. ▇▇▇ The courts take judicial notice that Bell, California, is in the County of Los Angeles. (*Bruce* v. *Bruce,* 121 Cal.App.2d 661, 663-664 [263 P.2d 895].) Defendants argue that the failure of the court to instruct the jury that Bell is in the County of Los Angeles precludes a finding that the venue of the action is in that county. The conclusion does not necessarily follow. ▇▇▇ Venue can be established by circumstantial evidence. (*People* v. *McGregor,* 88 Cal. 140, 143-144 [26 P. 97]; *People* v. *West,* 34 Cal.App.2d 55, 59 [93 P.2d 153].) There was evidence that Bell is in California. The officers who arrested Ford were police officers of the city of Los Angeles. One of the officers who questioned Ford testified he was a deputy sheriff of the County of Los Angeles. Leakes' apartment was in Los Angeles. The chemist who examined the panel truck and testified with respect to it was employed in the

office of the sheriff of the County of Los Angeles. The officers who arrested Randolph on the day of the robbery were police officers of the city of Los Angeles. One of them testified Randolph's home was in Los Angeles. Without going further into detail, it is enough to say that the evidence directly and logically points to the single inference that the offenses were committed in the County of Los Angeles. (See *People* v. *De Soto*, 33 Cal.App.2d 478, 480 [92 P.2d 466].) As said by Mr. Presiding Justice White in *People* v. *West, supra*, 34 Cal.App.2d 55, (p. 59) : "Under the facts of this case the jury were justified in concluding, as jurors, what they well knew as men and women, that the streets named by some of the witnesses meant certain well known and so named streets in the" County of Los Angeles.

The evidence was sufficient to sustain the verdict. Within less than an hour and a half after the offenses were committed, Ford was driving the truck that was used to carry the safe away. He was wearing a baseball-type cap and was carrying a handkerchief used by one of the robbers. He offered to return all the money taken plus $1,500 if he was released. He told the court and jury an improbable story as to his movements on the morning of the robbery and with respect to his possession of the truck, which the jury could have concluded was an intentional fabrication indicating a consciousness of guilt. He had previously been convicted of burglary on one occasion and of attempted burglary on another. He met Leakes in San Quentin. Although Leakes testified, he did not go into his whereabouts at the time the offenses were committed. He had no explanation for the presence of Clock Drive-In money wrappers in the wastebasket in his apartment. He was unemployed. His explanation of the possession of $450 at the time of his arrest was that he was bookmaking and had accepted bets totaling that amount that day, March 15; that he was a traveling bookmaker going from house to house. He could not name a single person from whom he had accepted a bet or a single horse that anyone had bet on. He said he had burned the tickets he had made out when he accepted bets before the officers arrested him. He made inculpatory statements to the police. The jury could reasonably have inferred from all the evidence that defendants were two of the perpetrators of the offenses charged.

The court declined to give this instruction requested by defendants:

"The law of this state admonishes you to view with caution

the testimony of any witness which purports to relate an oral admission of the defendant or an oral confession by him.''

Defendants assert prejudicial error. It was error to refuse to give the instruction. (Code Civ. Proc., § 2061, subd. 4; *People* v. *Cornett*, 33 Cal.2d 33, 39-40 [198 P.2d 877]; *People* v. *Bemis*, 33 Cal.2d 395, 398-399 [202 P.2d 82]; *People* v. *Deloney*, 41 Cal.2d 832, 840 [264 P.2d 532].) ■ The question is whether the failure to give the instruction was prejudicial in view of the entire record. We think not. The test of prejudice is whether on a review of the entire evidence it can be said that the jury could reasonably have reached a contrary verdict. From the entire record it is not reasonable to believe that if the cautionary instruction had been given, the jury would have disregarded the testimony relative to the admissions, accepted the far-fetched testimony of defendants at the trial, and have come to the conclusion that there was a reasonable doubt as to the guilt of either defendant. It is highly improbable that any different verdict would have been rendered by the jury had the omission to give the instruction not occurred.

The judgment and the order denying a new trial are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.