[Crim. No. 2676. Third Dist. Jan. 25, 1957.]

THE PEOPLE, Respondent, v. JOBIE STRICKLAND, Appellant.

Walter D. Cook, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

WARNE, J. pro tem.*—The defendant was charged in an indictment with having murdered Donald Junior Gray, alias Isiah Gaines, on the 14th day of October, 1955. He pleaded not guilty and not guilty by reason of insanity. A jury found defendant guilty of murder of the first degree and fixed the penalty at life imprisonment. The jury further found that the defendant was sane at the time of the offense

*Assigned by Chairman of Judicial Council.

charged. Defendant appeals from the judgment and from the order denying his motion for a new trial.

Defendant contends that the evidence is insufficient to support the judgment in three respects: (1) That the evidence does not sufficiently establish venue; (2) That the evidence is insufficient to justify a verdict of murder in the first degree in that premeditation and deliberation were not proved, and, (3) That the death was not shown to have occurred within a year and a day after the act of the defendant. Defendant further contends that the court erred in its instructions to the jury in assuming in one of the instructions given that the decedent, Donald Junior Gray, had died as a result of the defendant's acts, and, secondly, that the court erred in failing to instruct the jury on circumstantial evidence. We have concluded that the evidence is sufficient to establish homicide in the first degree and that all of defendant's contentions are without merit.

The decedent, a young man in his early twenties, considered to be of rather low intelligence and somewhat simple, had done some work for defendant, for which he was paid on the evening of October 13, 1955. On the following morning decedent was riding in an automobile being driven by a Mr. J. D. Weber. As they proceeded along Wyandotte Street in Oroville, defendant Strickland drove ahead of them and waved them over. Weber drove his car across the intersection and stopped, and defendant pulled up alongside of him and stopped in the middle of the street. Defendant then got out of his car, came to Weber's car and told decedent to get out of the car, which he did after some struggling with the defendant. Defendant then started pushing decedent toward his car and accusing him of stealing $20 from him or of having received $20 more than was due him because a twenty dollar bill had stuck to the ten dollar bill with which defendant had paid the decedent for his work.

The decedent refused to get in defendant's car, and the defendant then obtained a tire iron from his car and struck decedent ''around up by the head.'' Decedent backed up and was then struck with the tire iron on the legs, whereupon decedent ran off down the street.

Defendant pursued the decedent and finally forced him to enter his car and drive it to a place across the street from where defendant lived. Decedent did so while the defendant held a knife at his neck. At this point they got out of the car, and appellant got a rock and hit decedent on the head

with it. Decedent did nothing other than ask defendant not to hit him.

Defendant called to his wife, and at his request she went back into the house and returned with a gun which she handed to defendant. The two parties then got back into the car and drove to a place referred to as the Hilltop. There defendant pulled decedent out of the car, and the two went behind an adjoining place known as the Hideout Club. During all this time defendant continued to accuse decedent of having the $20, and decedent repeatedly denied that he had the money. During this period of time, as testified to by several witnesses, defendant stated that he would kill the decedent, Donald Junior Gray, unless he gave him the $20. During all of this time decedent had nothing in his hands and made no threatening moves or motions toward defendant. He merely repeated his denial of having taken or received the $20. Finally, defendant asked decedent to take out his wallet and drop it on the ground, and as he did so, defendant fired two shots at decedent, the first one missing, the second hitting the decedent. Decedent died shortly thereafter on the same day, the cause of death being the bullet wound.

As previously stated, defendant urges that the evidence at the trial is insufficient to establish venue in that there is no evidence in the record to show that the crime, or that death, occurred in the County of Butte. ■ Venue, like any other fact in a criminal case, may be established by circumstantial evidence. ■ It need not be proved beyond a reasonable doubt. (*People* v. *Cavanaugh*, 44 Cal.2d 252 [282 P.2d 53]; *People* v. *Boyden*, 116 Cal.App.2d 278 [253 P.2d 773]; *People* v. *Ford*, 133 Cal.App.2d 695 [284 P.2d 836].) ■ These are the facts and circumstances as shown by the record from which the jury could reasonably conclude that the crime was committed in Butte County: Sheriff Gillick of Butte County was called to the scene of the crime and apprehended the defendant within a short time after the shooting. Defendant was taken to the county jail by Deputy Sheriff Lucas of Butte County. ■ It is presumed that these officers were performing their official duty within Butte County. (*People* v. *Wright*, 79 Cal.App. 523 [250 P. 204].) ■ The testimony that the trouble leading up to the shooting started on Wyandotte Street and ended at a place known as the Hilltop where defendant was taken into custody by the sheriff would justify the jurors in concluding that the street and place named by some of the witnesses

were located in Oroville, Butte County. (*People* v. *West,* 34 Cal.App.2d 55 [93 P.2d 153].) Further, a certified copy of the death certificate of the decedent was introduced in evidence without objection, wherein the date of decedent's death is stated as 10-14-55, in the city of Oroville, Butte County. ▆ A death certificate registered within a period of one year from the date of the event is prima facie evidence in all courts and places of the facts stated in it. (Health & Saf. Code, § 10551.) From the above facts the jury was justified in finding that the murder was committed in Butte County. Section 790 of the Penal Code provides that the county where the victim died or where the injury was inflicted or the body was found is the proper place of trial.

▆ The defendant's second contention is that the evidence is insufficient to establish murder of the first degree in that such evidence does not show premeditation and deliberation. Several witnesses testified that the defendant repeatedly stated to the decedent that he would kill him if he did not give him the $20. Witnesses also testified that immediately prior to the shooting, the defendant stated to the decedent while pointing the gun at him: "You don't think I'll shoot you, do you?" Immediately after the shooting defendant stated to witnesses that the first time he fired the gun he merely intended to scare the decedent, but the second shot was deliberately aimed with intent to kill. He admitted to the deputy sheriff who transported him to the jail that he had shot decedent, and he had killed him. The witness Weber testified that when he asked defendant not to hurt the boy, that defendant replied: "That isn't all I am going to do, I am going to kill him if he don't give me my $20." After he had shot the decedent, he walked over and picked up the wallet and stated: "Where's my twenty, I ought to kill you good." There is also testimony that defendant repeatedly cursed the boy.

Murder is defined as "the unlawful killing of a human being with malice aforethought." (Pen. Code, § 187.) To constitute murder of the first degree (Pen. Code, § 189) the homicide must have been perpetrated "by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing," or committed in the perpetration of certain enumerated felonies.

▆ It is the exclusive province of the jury to determine from the evidence whether the killing was the "wilful, deliberate and premeditated" act of defendant. (*People* v.

*Eggers,* 30 Cal.2d 676 [185 P.2d 1]; *People* v. *Wells,* 10 Cal.2d 610, 624 [76 P.2d 493].) ▮ However "as is true as to all factual issues resolved by a jury, the evidence upon which the determination is made is subject to review on the question of its legal sufficiency to support the verdict." (*People* v. *Holt,* 25 Cal.2d 59, 90 [153 P.2d 21].) Considering the acts and conduct of the defendant from the time he first stopped the decedent up to the time the fatal shot was fired, together with defendant's statements that he intended to kill the decedent, we conclude that there is substantial evidence in support of the jury's verdict. ▮ This court may not, in reviewing the evidence, substitute its judgment for that of the jury under such circumstances. (*People* v. *Eggers, supra,* and cases cited therein.) ▮ "Conversely, to justify the reversal of a judgment of conviction, the record must clearly show that the evidence could not be interpreted as supporting the verdict." (*People* v. *Eggers, supra; People* v. *Tedesco,* 1 Cal.2d 211, 219 [34 P.2d 467].) ▮ Applying these rules, the jury's determination of first degree murder must be upheld.

▮ Defendant urges that the evidence is insufficient to establish the date on which the defendant shot the deceased and that death occurred within a year and a day following the shooting. This contention is based upon the fact that no witness stated the year in which the events occurred. The record will not bear defendant out in this contention. Sheriff Gillick was asked this question: "On October 14 *of this year* did you report on a homicide call?" (Italics added.) He answered: "I did, yes sir." The record in the case shows that the sheriff gave this testimony on December 30, 1955. As before stated, Gillick personally apprehended the defendant at the scene of the shooting. Further, the death certificate which was introduced in evidence at the trial also established the date of death. (*People* v. *Crozier,* 119 Cal.App.2d 204 [258 P.2d 1029].) The death certificate stated that Donald Junior Gray (alias Isiah Gaines) died of a gunshot wound of lungs and spinal cord, on October 14, 1955.

▮ Defendant next contends that the court committed error and prejudiced the rights of defendant by giving People's proposed instruction Number 12, in that said instruction assumed that Donald Junior Gray was "deceased," and that his life was taken by defendant. Assuming that it does, we fail to understand how it was in the least prejudicial to the rights of the defendant. The fact of the death and the

fact that such death resulted from the act of the defendant in shooting Donald Junior Gray was never contested by the defendant at the trial. He admitted the shooting. The death certificate gives the cause of death as resulting from a gunshot. It was clearly proved that the gunshot wound was inflicted by defendant. The jury could not have been misled by the giving of this instruction in the light of this evidence.

Lastly, the defendant contends that the court erred in failing to give the defendant's requested instruction relating to circumstantial evidence. These instructions are contained in CALJIC Numbers 26, 27 and 28.

The evidence in this case is nearly all direct. "A court is not required to instruct upon the rules of law applicable to circumstantial evidence which is incidental to and corroborative of direct evidence." (*People* v. *Watson,* 46 Cal.2d 818, 831 [299 P.2d 243] ; *People* v. *Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805] ; *People* v. *Harmon,* 89 Cal.App.2d 55, 60 [200 P.2d 32].)

The judgment and the order are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied February 19, 1957, and appellant's petition for a hearing by the Supreme Court was denied March 20, 1957.