[Crim. No. 3570.   Third Dist.   Sept. 29, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. JIMMIE ALLEN HOLDER, Defendant and Appellant.

Tebbe, Correia & Kleaver for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Doris H. Maier, Assistant Attorney General, and Anthony S. DaVigo, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendant was charged with two counts of manslaughter by vehicle (Pen. Code, § 192, subd. 3(a)) in the killing of Elmer Ernest Leatherman and Elvira Leatherman. By stipulation the issue of his guilt or innocence was submitted on the record of the preliminary examination. The trial court found him guilty and he appeals from the ensuing judgment.

His primary contention is insufficiency of the evidence to justify the finding of guilt. ■ The test on appeal is not whether guilt has been established beyond a reasonable doubt, but whether there is substantial evidence to support the conclusion of the fact trier. The reviewing court will assume in favor of the verdict or finding the existence of every fact which the fact-finder could reasonably deduce and then determine whether such facts support the verdict or finding. (*People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911].)

■ Death as a proximate result of the defendant's unlawful driving is an essential element of proof in vehicle manslaughter cases. (*People* v. *Tracy*, 199 Cal.App.2d 163, 168-169 [18 Cal.Rptr. 487]; *People* v. *Freudenberg*, 121 Cal. App.2d 564, 583 [263 P.2d 875].) The oral testimony described a collision between an automobile driven by defendant and one occupied by the decedents. Defendant does not urge inadequacy of the evidence regarding his own role in the accident. Rather, the question is whether there is any substantial evidence of the Leathermans' deaths in the accident.

Two witnesses testified at the preliminary examination. Robert Chapman testified that on December 13, 1963, he witnessed an automobile accident on Highway 99 about 12 miles north of Yreka. He testified that he was traveling in a northerly direction following two vehicles, the first of which was a Volkswagen bus. He saw a white 1960 Chevrolet come around a curve at 60 miles per hour, traveling in a southerly direction. At least one-half of the Chevrolet was in the northbound lane. The Chevrolet collided head-on with the Volkswagen bus, which was entirely in the northbound lane. The Chevrolet did not appear to swerve from its course to avoid the collision. Chapman, after observing the collision, turned around and went to a place which he called Bur-Bel and telephoned the Highway Patrol. He did not see defendant at any time.

The other witness was Officer Schoellerman of the California Highway Patrol, who investigated the accident. Schoellerman received a call relative to the accident at 5:44 p. m. on December 13, 1963. He went to the accident scene, about 12 miles north of Yreka. Schoellerman spoke to defendant, who identified himself as the driver of the Chevrolet. In Schoellerman's opinion, defendant was under the influence of alcohol at the time. Schoellerman identified the occupants of the Volkswagen bus as Mr. and Mrs. Leatherman. Schoellerman observed that most of the physical evidence, including gouge

marks in the road, debris and mud, was in the northbound lane. There was a skid mark (made by one of the right wheels of the Chevrolet, in Schoellerman's opinion) 24 feet long beginning approximately 6 inches west of the center line in the southbound lane and terminating 2 inches west of the center line.

Certified copies of two death certificates by the coroner of Siskiyou County were admitted in evidence. In a space provided for the immediate cause of death, both certificates described rupture of internal organs and massive hemorrhage. Although the printed form called for "underlying cause" of death, neither certificate bore a responsive entry at that point. In a space provided for "injury information," both certificates specified "accident," described as "Head on automobile collision" occurring at 5:40 p. m., December 13, 1963, at a place described as "Highway" located at Hornbrook, Siskiyou County. The death certificate of Mr. Leatherman indicated that the place of death was "Highway 99—Approx. 3 miles north of Bur-Bel resort" at Hornbrook in Siskiyou County. Time of death was stated as December 13, 1963, 5:40 p. m. The death certificate of Mrs. Leatherman indicated that she died at Siskiyou County General Hospital at Yreka, California, on December 13, 1963, at 7:55 p. m.

As to cause of death, the oral testimony established only that Mr. and Mrs. Leatherman had been involved in a collision with a car driven by defendant. The prosecution did not ask Officer Schoellerman to testify as to the physical condition of either Mr. or Mrs. Leatherman when he saw them and did not inquire whether either was dead, injured or utterly unscathed. The prosecution did not call the coroner, the autopsy surgeon or anyone else who might have been able to establish injuries resulting from the accident described in the oral testimony.

Health and Safety Code section 10252 provides that the coroner shall state on the death certificate "the disease or condition directly leading to death, antecedent causes, other significant conditions contributing to death and such other medical and health section data as may be required on the certificate, and the hour and day on which death occurred." Section 10577 of the same code declares that a properly certified copy of the death certificate is prima facie evidence of the facts stated therein.

The authorities are in disagreement as to which elements

of the death certificate are statements of "fact" and which are not. The line between fact and opinion is often thin and indistinct. (*Healy* v. *Visalia etc. R.R. Co.*, 101 Cal. 585, 589 [36 P. 125]; 7 Wigmore on Evidence (3d ed.) § 1919.) Occurrence of death is doubtless a fact which is proved prima facie by the certificate. (*Estate of Wolleb*, 56 Cal.App.2d 488, 494-495 [132 P.2d 864].) So is the date of death. (*People* v. *Strickland*, 148 Cal.App.2d 18, 23 [306 P.2d 40].) The cause of death, however, may amount only to an opinion or conclusion, sometimes resulting from inferences drawn by a medical expert. *People* v. *Terrell*, 138 Cal.App.2d 35, 57-58 [291 P.2d 155], disapproves evidentiary use of a private hospital record diagnosing the cause of death, stating that such a diagnosis expresses a conclusion, not a fact. *People* v. *Williams*, 174 Cal.App.2d 364, 390 [345 P.2d 47], recognizes the *Terrell* case and the distinction between fact and medical opinion in connection with evidentiary use of public autopsy records. *People* v. *Proctor*, 108 Cal.App.2d 739 [239 P.2d 697], holds that death certificate entries such as "accidental," "suicidal" or "homicidal" amount only to an opinion or conclusion, not admissible to establish the cause of death. Other decisions assume without discussion that cause of death (no matter how dependent on medical conclusions) is a fact which may be established prima facie by the certificate. (*Robinson* v. *Western States Gas & Elec. Co.*, 184 Cal. 401, 406-407 [194 P. 39]; *People* v. *Hopper*, 168 Cal.App.2d 406, 410 [336 P.2d 28]; *People* v. *Crozier*, 119 Cal.App.2d 204, 208 [258 P.2d 1029]; *Bennett* v. *Brady*, 17 Cal.App.2d 114, 118 [61 P.2d 530]; *Bryson* v. *Manhart*, 11 Cal.App.2d 691, 696 [54 P.2d 778].)

The point of the matter is not that conclusionary entries on death certificates are necessarily unreliable; rather, that Health and Safety Code section 10577 would permit their admission as hearsay. The coupling of hearsay and conclusionary elements in a single piece of evidence arouses the more fundamental problem of fairness to the defendant in a criminal case. The cause of death entry may emanate from a complex value judgment drawn by a medical expert. (See, for example, *Longuy* v. *La Societe Francaise*, 52 Cal.App. 370 [198 P. 1011].) When it rides into the fray mounted on the saddle of a public document, it is unaccompanied by the expert. The latter appears in court only in the form of the document. He himself is not available for cross-examination by the defense,

For present purposes we may assume, without deciding, two propositions of law tending to support defendant's position: first, that section 10577, permitting evidentiary use of death certificates as prima facie proof of fact, is designed only to create an exception to the general prohibition against hearsay methods of proof; second, that the statute does not, at least in criminal cases, permit prima facie proof of conclusionary statements drawn from an autopsy or investigation, thus depriving the defendant of an opportunity to confront and cross-examine the witnesses against him. (See Pen. Code, § 686, subd. 3; *Snyder* v. *Massachusetts,* 291 U.S. 97, 106 [54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575]; *People* v. *Valdez,* 82 Cal. App.2d 744, 750 [187 P.2d 74]; 14 Cal.Jur.2d, Criminal Law, § 139; 5 Wigmore on Evidence (3d ed.) §§ 1395-1397.) On these assumptions, the present death certificate would be admissible proof only of bald factual entries, for example, the fact of death, time and place of death, character of the injuries and time and place of the accident or other trauma-producing event.

Even on these assumptions, the two certificates contain sufficient entries of fact to sustain the trial court's implied finding that Mr. and Mrs. Leatherman died in or from injuries suffered in the accident described by the two witnesses who testified in court. Both witnesses had testified to a collision between a white Chevrolet and a Volkswagen bus on December 13, 1963, at a point on Highway 99 approximately 12 miles north of Yreka. Mr. Chapman stated that it was a head-on collision. Although he was not asked for the approximate hour of the accident, Mr. Chapman testified that he turned around (i.e., he drove southward) and telephoned the Highway Patrol from a place called Bur-Bel. Officer Schoellerman in turn received a call to go to the accident scene at 5:44 p. m. The officer identified Mr. and Mrs. Leatherman as the occupants of the Volkswagen bus and defendant as driver of the white Chevrolet. The death certificates supply prima facie information, irrefragably factual, that Mr. and Mrs. Leatherman died; that they died in or after a head-on collision occurring on Highway 99 12 miles north of Yreka and 3 miles north of the Bur-Bel resort, at 5:40 p. m. on December 13, 1963. Mr. Leatherman's death certificate shows the time of his death at 5:40 p. m., which is the exact time specified for the accident. Mrs. Leatherman's certificate shows death at 7:55 p. m., slightly more than two hours following the accident. Both certificates describe serious internal in-

juries. Location, time and circumstances detailed in the death certificates are identical with those elements as described by witnesses.

■ The composite set of facts recorded on the death certificate did not directly demonstrate the cause of death. It constituted circumstantial evidence, imposing on the trier of fact the necessity of drawing inferences. (Code Civ. Proc., § 1832; *People* v. *Goldstein*, 139 Cal.App.2d 146, 152 [293 P.2d 495].)

■ Manslaughter may, of course, be proved circumstantially. (*People* v. *Peters*, 96 Cal.App.2d 671, 675 [216 P.2d 145].) As prima facie proof, these recorded facts were sufficient unless contradicted and overcome by other evidence. (Code Civ. Proc., § 1833.) There was no contradictory evidence. From the facts so proved, the fact trier could reasonably draw inferences that the accident described in the death certificates was none other than that described by the witnesses; that both Mr. and Mrs. Leatherman had received severe injuries in that action; that these injuries were the immediate cause of death. These inferences, coupled with direct proof of the collision to which defendant was a party, provided substantial support for the ultimate finding that defendant's unlawful driving proximately caused the deaths.

Defendant points to a brief opinion of the trial court, stating that the evidence was barely sufficient to connect defendant with the crime and that identity of the accident described in the testimony and in the death certificates was "just barely" within the field of fair inference rather than speculation. The opinion does no more than express the view that the prosecution (notwithstanding the evident availability of much other evidence) chose to submit the issue of guilt on a record which was skimpy and barely adequate. With that view we agree. The finding of guilt necessarily expresses the trial judge's inner conviction that defendant's guilt had been proved beyond a reasonable doubt. Even if the opinion could be used to impeach the finding, it does not do so.

■ Defendant contends that his admission of participation in the accident as related to Officer Schoellerman should have been excluded, because the corpus delicti had not yet been established. Evidence of defendant's connection with the crime was not essential to proof of the corpus delicti. (*People* v. *Amaya*, 40 Cal.2d 70, 76 [251 P.2d 324].) ■ The trial court had discretionary power to admit evidence of defendant's conversation with the officer before the corpus delicti was completely established, provided that it was ultimately

established. (*People* v. *Proctor*, 169 Cal.App.2d 269, 278-279 [337 P.2d 93].)

Judgment affirmed.

Pierce, P. J., and Van Dyke, J.,* concurred.

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.