KITCHENS, Justice,
dissenting:
¶ 68. The judgment of the trial court should be reversed due to the trial judge’s failure to recognize that defense counsel established a prima facie Batson challenge during voir dire and due to the trial judge’s failure to declare a mistrial after a prosecution witness commented on Birk-head’s constitutionally protected silence. Because the majority holds otherwise, I *1241 respectfully dissent. I also write to express my disagreement with the majority’s analysis of the admissibility of the contents of the death certificate. While I find the issue proeedurally barred, the time of death and the time of injury listed on the certificate constitute hearsay that also qualifies as testimonial evidence under our federal and state constitutions’ confrontation clauses. U.S. Const, amend. VI; Miss. Const, art. 3, § 26.

Batson

¶ 69. Birkhead’s appeal does not present the ultimate question of whether the trial court violated his constitutional rights under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Rather, we meet only the preliminary question of whether “all of the circumstances that bear upon the issue of racial animosity,” Snyder v. Louisiana, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) (citing Miller-El v. Dretke, 545 U.S. 231, 239, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)), constituted “a prima facie showing that a peremptory challenge has been exercised on the basis of race,” Id. at 476, 128 S.Ct. 1203 (quoting Miller-El, 545 U.S. at 277, 125 S.Ct. 2317, (Thomas, J., dissenting)). Such determinations are necessarily case specific and will not be overturned on appellate review, absent clear error. Woodward v. State, 726 So.2d 524, 530 (Miss.1998).
II70. But the facts of this case easily clear that high hurdle. When Birkhead lodged his Batson challenge, the prosecution had exercised five of its twelve peremptory strikes, and all five had been used against African Americans. If this does not demonstrate the sort of “ ‘pattern’ of strikes against black jurors included in the particular venire [that] might give rise to an inference of discrimination,” Batson, 476 U.S. at 96, 106 S.Ct. 1712, then one has a hard time imagining a set of facts that would.[19] See Flowers v. State, 947 So.2d 910 (Miss.2007) (reversing on Batson grounds where prosecutors used 100 percent of their peremptory strikes against African Americans).
¶ 71. In this case, the prosecutor very well may have been able to articulate reasonable, race-neutral reasons for his peremptory strikes in accordance with the second prong of the Batson process, and in light of such explanations, the trial judge could have been within his discretion to deny Birkhead’s challenges. However, that is not the question before us. The question is whether Birkhead presented a prima facie showing of racially motivated peremptory strikes. I would find that the State’s use of each of its first five peremp: tory challenges against African Americans sufficiently demonstrated such a showing.

Comment on Defendant’s Silence

¶ 72. Both the Fifth Amendment to the U.S. Constitution and Article 3, Section 26, of the Mississippi Constitution clearly forbid self-compulsion, a prohibition that “has been construed by this Court to have been violated, not only when a direct statement is made by the prosecution as to the defendant’s not testifying, but also by a comment which could reasonably be construed by a jury as a comment on the defendant’s *1242 failure to testify.” Griffin v. State, 557 So.2d 542, 552 (Miss.1990) (citations omitted). “Simply put, the government cannot use an accused’s exercise of a Constitutional right as a weapon to convict him.” Emery v. State, 869 So.2d 405, 409 (Miss.2004) (quoting Puckett v. State, 737 So.2d 322 (Miss.1999)). In the case at bar, the prosecution witness’s reference to Birkhead’s post-Mirandized silence clearly commented on the exercise of that right in violation of Birkhead’s right to silence under the U.S. and Mississippi constitutions. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
¶ 73. Some constitutional errors, in some circumstances, may be deemed harmless. See Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). But if a reviewing court discovers a constitutional error, coupled with a reasonable possibility that the error could have contributed to the conviction, then the error is not harmless. Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Phrased another way, in order to identify harmless error, an appellate court must determine “beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” Delashmit v. State, 991 So.2d 1215, 1223 (Miss.2008). Such a determination necessarily requires case-by-case review. Riddley v. State, 777 So.2d 31, 35 (Miss.2000). In this case, the trial record simply does not reveal the “overwhelming evidence” that sustains a conviction in the face of a constitutional error. See Williams v. State, 991 So.2d 593, 606 (Miss.2008). To be sure, the State’s evidence was strong, but its evidence was purely circumstantial.
¶ 74. Furthermore, this case is easily distinguished from Strahan v. State, 729 So.2d 800 (Miss.1998), upon which the majority relies. Maj. Op. at ¶ 52. In that case, the “very close issue, which involves a fundamental right,” was not whether the State’s reference to a defendant’s silence was cured by a limiting instruction, but rather whether the prosecutor’s statement actually was an allegation that the defendant had not presented jurors with a viable case. Strahan, 729 So.2d at 807. In the present case, no such confusion exists. The record leaves no room for doubt that the defendant’s constitutionally protected silence was addressed, a clear violation of our rule that “a direct reference to the defendant’s failure to testify is strictly prohibited.” Id.

Death Certificate

¶ 75. My deepest misgiving in this case, though, stems from the majority’s analysis of the admissibility of the death certifí-cate.[20] I agree that this point of error does not require reversal, but not because it lacks merit, as the majority holds. We may not reverse on this issue, not because it is meritless, but because the defendant’s trial counsel failed to make a proper objection to the evidence and also failed to object to prosecution witnesses’ testimony regarding the objectionable evidence — the time of injury and/or the time of death.[21]
¶ 76. As today’s majority opinion recognizes, when the prosecution moved to admit the death certificate, the defense counsel made the following objection; “On the report they have the hour of injury as being 3:38 a.m. I don’t know that they have established that. They have the hour of death as being 3:50 a.m. I don’t think *1243 they have established that. We will object to it being introduced.” At no point did the defense attorney object to the contents of the death certificate as hearsay or raise any objection that the admission of the certificate would violate the defendant’s constitutional right to confront his accusers. This Court has held that the failure to articulate a specific reason for an objection to the introduction of evidence will waive the issue on appeal. Duplantis v. State, 708 So.2d 1327, 1346-47 (Miss.1998) (quoting Norman v. State, 302 So.2d 254, 259 (Miss.1974)).
1177. There is, of course, a “plain error” analysis, under which this Court may reverse on ah issue not otherwise preserved for appeal if there was an error that involved a fundamental right and resulted in a “manifest miscarriage of justice” or “seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.” Brown v. State, 995 So.2d 698, 703 (Miss.2008) (citations omitted). However, throughout the trial, the prosecution elicited significant testimony regarding the victim’s time of death without objection from defense counsel.[22] For example, Officer Payne, though not qualified as an expert in such matters, testified that Lanier had died “five to ten minutes” before Officer Payne arrived at the scene. And, although the pathologist, Dr. Steven Hayne, testified at one point that he could not determine a time of death, he also testified that “there was obvious medical intervention on the decedent placed at about the time of death.” Dr. Hayne also testified, in response to a line of questioning from the defense attorney, that the victim’s external body temperature would have dropped rapidly following death, corroborating Officer Payne’s opinion that the victim had died recently because the body was still warm. Given defense counsel’s failure to object to the evidence regarding the time of injury and/or death, and the defense attorney’s having elicited such information from Dr. Hayne, the admissibility of the contents of the death certificate could be presented to this Court only as an ineffective-assistance-of-counsel claim. We are not presented with such an argument, and this Court has held that ineffective-assistance-of-counsel claims are better presented in petitions for post-conviction relief. Archer v. State, 986 So.2d 951, 955 (Miss. 2008) (citations omitted).
¶78. The majority does not make an explicit finding that the issue is procedurally barred, but instead analyzes the merits of Birkhead’s argument. I respectfully disagree with this approach, and would find that the time of injury and the time of death listed on the death certificate constitute objectionable hearsay subject to a state and federal confrontation clause analysis.
¶79. Undoubtedly, as the majority rightly asserts, the death certificate is a self-authenticating document under Mississippi Rule of Evidence 902(4). See Maj. Op. at ¶ 30. The majority also is correct that the death certificate itself is excepted from the hearsay rule as a record of a vital statistic under Mississippi- Rule of Evidence 803(9). See Maj. Op. at ¶ 31. But these rules establish only that the death certificate is precisely that: a death, certificate. When the state registrar certifies a copy of a death certificate, she is certifying only “that the above is a true and correct copy of the certificate on file in • th[at] office.” Authenticity is not the prime con *1244 cern here. Admissibility is. The contents of the death certificate, however, still are subject to the rules of evidence. Mississippi Rule of Evidence 805 provides, “[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rale provided in these rules.” Unlike, for example, the deceased’s name and address which are listed on the death certificate, the time of death and time of injury are “assertion[s]” being “offered in evidence to prove the truth of the matter asserted.” M.R.E. 801. Therefore, these “assertions” are hearsay and are “not admissible except as provided by law.” M.R.E. 802.
¶ 80. The majority relies on Shell v. State, 554 So.2d 887, 898 (Miss.1989), to reject Birkhead’s hearsay argument. But, unlike today’s case, the defendant in Shell did not make an objection to the contents of the death certificate; he merely argued that the entire document was inadmissible. Id. The Court correctly held that the death certificate itself was not hearsay under Mississippi Rule of Evidence 803(9).
¶ 81. The majority opinion also rejects Birkhead’s reliance on Flowers v. State, 243 So.2d 564 (Miss.1971), because Flowers is a “pre-Rules case” and “old law.” Maj. Op. at ¶ 31. However, nothing in Rule 803(9) abrogates the Flowers decision. Indeed, the comment to Rule 803(9) specifically recognizes that the rule was a codification of existing law: “This rule is similar to pre-existing Mississippi law. For example, [Mississippi Code Section] 41-57-9 formerly provided for the admission of certified copies of birth and death.... ”
¶ 82. When this Court held in Flowers, 243 So.2d at 565, that death certificates could be received into evidence but used only to show the “physical cause of death,” this Court was analyzing the same section of the Code mentioned in the comment to Rule 803(9). See Miss.Code Ann. § 41-57-9 (Rev.2009); Miss.Code § 7064 (1942) (“Any copy of the records of birth, sickness or death, when properly certified to [sic] by the state registrar of vital statistics, to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts therein stated.”) This statute has existed for nearly a century, and early on this Court rightly recognized, despite the statute’s broad language, that not everything listed on the certificate was competent evidence. In Massachusetts Protective Association v. Cranford, 137 Miss. 876, 102 So. 171, 172 (1924), this Court held inadmissible a death certificate which stated that the cause of death was “suicidal.” The Court reasoned that the death certificate could not be used to prove the insured had committed suicide, a fact that would have relieved the insurance company of its obligation to pay the claim. Id. at 173-74. Specifically, this Court held “we do not think the statute was intended to authorize certificates to be introduced as prima facie evidence except as to the prime physical cause of death.” Id. at 173. Obviously, the Court was not prepared to give validity to every assertion contained in a death certificate, and we should not do so today. While Rule 803(9) provides an exception for the death certificate itself, Rule 805, governing hearsay within hearsay, clearly is applicable to the contents of the death certificate.
¶ 83. Having established the contents of the document as hearsay, we also are asked to determine whether admission of the contents of the document, without a supporting witness, violated Birkhead’s right to confront his accusers. U.S. Const, amend. VI; Miss. Const, art. 3, § 26. As an initial matter, we do not know who supplied the time of death or the time of injury included in the death certificate. The coroner signed the document to eerti *1245 fy only that “on the basis of examination and/or investigation, in [his] opinion, death occurred due to the cause(s) and manner as stated.” However, his signature appears above the section labeled “cause of death.” That section was completed by handwritten entries; and while we cannot be certain who completed this portion of the document, the handwriting appeal's to be the same as that on Dr. Hayne’s autopsy report. The “hour of injury” is typed as 3:38 a.m., and the “hour of death” is typed as 3:50 a.m. Coincidentally, more than one officer testified that he arrived on the scene at exactly 3:38 a.m., the precise time listed as the “hour of injury.”
¶ 84. The majority' seems to say that Birkhead must provide this Court the identity of the person who supplied the information in order to succeed on a Sixth Amendment claim. Maj. Op. at ¶¶ 38-39. While we cannot know who provided the objectionable information, our ignorance of that person’s identity does not change the analysis. Under our state and federal constitutions, the accused has the right “to be confronted with the witnesses against him.” U.S. Const, amend. VI; Miss. Const, art. 3, § 26. That the identity of the witness or witnesses remains unknown in this case merely highlights the primary purpose of the constitutional guarantees of the right to confront one’s accuser(s): the opportunity to test the validity of the evidence against the accused.
¶ 85. The majority holds that contents of the death certifícate are not subject to a Confrontation Clause analysis because the certificate was “created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at trial.” Melendez-Diaz v. Mass., — U.S. -, 129 S.Ct. 2527, 2539-40, 174 L.Ed.2d 314 (2009). I respectfully and strenuously disagree. The very existence of Mississippi Code Section 41-57-9 and Mississippi Rule of Evidence 803(9) leaves no room for doubt that the death certificate “would be available for use at a later trial.” Crawford, v. Washington, 541 U.S. 36, 52, 124 S.Ct. 1354, 158. L.Ed.2d 177 (2004).[23]
¶ 86. The majority also finds it noteworthy that the time of injury “was not an essential element of the charge.” Maj. Op. at ¶ 42. I fail to see how this is relevant to a Confrontation Clause analysis. By establishing that Lanier was fatally injured at a time when Birkhead was in Lanier’s car, the State was able to show that Birk-head had the opportunity and was the only person who could have killed Lanier. Without a confession or an eyewitness to the murder, the State’s case was entirely circumstantial.[24] Thus, if the injury occurred at the same time Birkhead was in Lanier’s car, then, logically, either Birk-head stabbed Lanier or Lanier stabbed himself.
¶ 87. In sum, had the defendant timely and properly objected, the “hour of death” and the “hour of injury” contained in the death certificate would have been inadmissible hearsay with fundamental constitutional implications. The rule enunciated in Flowers has not changed with the pronouncement of our rules of evidence or with the United States Supreme Court’s *1246 latest decisions concerning the Sixth Amendment’s Confrontation Clause. Statutes similar to Mississippi Code Section 41-57-9 can be found on the books in many states, but the courts in those states, like ours, historically have refused to hold that the contents of a death certificate qualify as competent evidence merely because they are presented in an official document. As more than one court has said:
The coupling of hearsay and conclusion-ary elements in a single piece of evidence arouses the more fundamental problem of fairness to the defendant in a criminal case. The cause of death entry may emanate from a complex value judgment drawn by a medical expert. When it rides into the fray mounted on a saddle of a public document, it is unaccompanied by the expert. The latter appears in court only in the form of the document. He himself is not available for cross-examination by the defense.
State v. Watson, 281 N.C. 221, 188 S.E.2d 289, 232 (1972) (quoting People v. Holder, 230 Cal.App.2d 50, 40 Cal.Rptr. 655 (1964)).

Conclusion

¶ 88. While I agree with the majority, for different reasons, that we cannot reverse based on the admission of the death certifícate, I disagree with the opinion’s analysis and would reverse the case on other grounds. The trial court committed clear error when it found that Birkhead had not made a prima facie Batson showing. In addition, the trial court abused its discretion in failing to declare a mistrial after a witness for the State blurted out, in the jury’s presence, that the accused had exercised his constitutional right to remain silent. For these reasons, I would reverse the judgment of the trial court and remand the case for a new trial. Because the majority holds differently, I respectfully dissent.
GRAVES, P.J., JOINS THIS OPINION.

. The majority incorrectly contends that this conclusion cannot be drawn without more information about the makeup of the venire. This argument fundamentally misconstrues the Batson process. All that need initially be submitted to the trial court is "a prima facie showing that a peremptory challenge has been exercised on the basis of race.” Snyder, 552 U.S. at 476, 128 S.Ct. 1203. If a chance exists that, as the majority implies, the racial makeup of the venire indicates racially neutral reasons for the challenged strikes, then that is a fact to be submitted to the court by the non-challenging party in the second stage of a Batson inquiry. Today’s case does not ask us to reach this second prong.

. The majority opinion devotes two sections of its discussion to the death certificate; but because they are so closely related, I combine these arguments into this one section.

. The majority refers mainly to the time of injury in its discussion, but the objection concerned both the time of injury and the time of death listed on the death certificate.

. The majority finds in paragraph 20 that "the State never attempted to establish an exact ‘time of injury,’ " but the record clearly demonstrates that the State was striving to show that the victim’s injury and resulting death occurred while Birkhead was in the vehicle.

. Indeed, quite recently, the United States District Court for the District of Columbia held that, pursuant to Melendez-Diaz, admitting a death certificate without a supporting witness would violate a defendants’ rights under the Sixth Amendment. U.S. v. Williams, 740 F.Supp.2d 4 (D.D.C.2010). The court held that the "death certificate that the government seeks to introduce in evidence in this matter fit[s] squarely within the definition of testimonial statements." Id. at 7.

. The trial court properly instructed the jury on circumstantial evidence.