[Crim. No. 5277. Second Dist., Div. Two. Mar. 10, 1955.]

THE PEOPLE, Respondent, v. PORFIRIO GONZALES CUEVAS et al., Defendants; GREGORY ARTHUR VILLALVA, Appellant.

394

Ernest Best for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

MOORE, P. J.—From a judgment convicting him of having violated the statute which forbids any person to possess a narcotic (Health & Saf. Code, § 11500) except upon the written prescription of a person licensed to prescribe same, appellant brings his cause here for review. He maintains that the conclusion of the trial court is not justified by the evidence.

### THE TOTAL EVIDENCE

Defendant Cuevas had for about a year operated a hotel of 30 rooms in Los Angeles. Gregory Villalva was a guest, and had been so for three months prior to the events here related. He worked in the daytime. On the day of his arrest, he arrived at his room about 4:30 p. m., bathed and dressed to go out for dinner. On leaving his room, he met Cuevas who told him they were "invited for a few drinks upstairs." They went to a room where three girls were serving whiskey.

They drank the liquor as they listened to the radio. After having satisfied his bibulous thirst, Cuevas told his companion that he had found a shopping bag in the trash can in the alley with something green in it, something like grass and would like to know whether it could be marijuana. The reply was, "I don't know unless I look at it. I had a previous arrest and I might help if it is marijuana." After running his hands through it and taking "a handful out" of the bag, appellant told Cuevas it was marijuana. He testified: "As I was running my hands through it, the officer walked in; I was not using it; it was not in my possession; it was not my room. When I entered the room it was already there."

The drinking party was in room 16. It was registered to a girl named Mickey who with her sister Carmen and a third girl, stranger to appellant, served the liquor. The marijuana was in the shopping bag at all times so far as appellant knew. He scraped some of it out, smelled it, and told Cuevas what it was. As he dropped the sample into the bag "perhaps some of it fell to the floor." He told Cuevas it might not be good; might as well get rid of it. He did not smoke any of it. Just as appellant observed the rain and that he could not go out, one of the girls departed through the door and the officers entered.

Although there were cigarette papers in the shopping bag, appellant did not touch them.

The only witness from whose testimony the court could have inferred possession by appellant was Officer Cook who testified as follows: "The door was open; I walked in and over to Cuevas; took his cigarette out of his mouth; on the table were two packages of green leafy material; two piles of it. Villalva was seated beside the table which had the piles of green leafy material and a package of wheat straw papers . . . I searched Villalva's pockets. Cuevas stated that he had sole ownership of the narcotics. We took the group to the narcotics office where we questioned them further, separately." After giving the admissions of Cuevas which were proof of his own guilt, the officer related his conversation with appellant: "He stated he lived in the hotel; had come to the room along with Cuevas and the three girls; that Cuevas opened the package; that he (appellant) had had experience with it and recognized it as marijuana, and he was just helping Cuevas manicure it and get it ready to roll. . . . The instant I entered the room Villalva was standing there; said it was not his."

■ While it is true that appellant never proclaimed his possession of the narcotic, never audibly asserted an interest in it, never had it on his person or in his own room, yet can it be concluded that the trial court was arbitrary in finding he was a possessor? When the officers entered room 16, appellant was standing by the table on which the flowering tops lay, was running his hands through the weeds; had decided it was marijuana, but still lingered in its presence. From the situation that prevailed as the officers entered, it required no stretch of the imagination for the trial court to determine that appellant had ceased to play the role of expert advisor; had renounced his aim to uphold the law; had entered into the gaiety of the occasion and had succumbed to the appeal of the glowing festivities and had accepted the implied invitation of Cuevas to join him in ''manicuring'' the weed so that all might enjoy the find. The court apparently reasoned, and not without cause, that if appellant had no intention to join in the narcotic debauch arranged by Cuevas, he would hastily have removed himself from the environs of the contraband. Not having done so, he still loitered as though he were staying for a spell of enjoyment. The court was fortified in such logic by the declarations of appellant to Officer Cook, namely: ''I recognized it as marijuana; I was helping Cuevas manicure it and get it ready to roll.''

The question naturally arises as to which is the primary proof of his possession, (1) his standing by the table with the narcotic before him, or (2) the officer's testimony of appellant's statement that he was manicuring the weed so that it could be rolled for smoking. It appears more reasonable to determine that a man's admission that he was manicuring the weed and getting it ready to roll would constitute the backbone of the proof, the substantial evidence of the crime. If that is true, we are confronted with the unavoidable query whether the author of such admission can be convicted solely upon the testimony of the officer? It is said that admissions retold at a trial are much like hearsay; that they have neither the compulsion of the oath nor the test of cross-examination; that they are of the same character as confessions which require corroboration. (*Opper* v. *United States,* 348 U.S. 84 [75 S.Ct. 158, 99 L.Ed. ——].) ■ Corroborative evidence is sufficient ''if it touches the corpus delicti in the sense of the injury against whose occurrence the law is directed and is of a type which goes to fortify the truthfulness of the confession.'' (*Ibid.* p. —— [99 L.Ed.], *Daeche* v. *United States,*

250 F. 566, 571 [162 C.C.A. 582].) The friendly relationship of appellant and Cuevas; the availability of appellant to participate in the social celebrations of his landlord; their inclinations to drink together at the same fountain and to inhale the incense ascending to the same god are factors fairly to be considered by the trial court in its attempt to ascertain whether the admission has been corroborated. (*People* v. *Henderson,* 34 Cal.2d 340, 343 [209 P.2d 785].)

█ The evidence of inculpatory participation need not be direct nor is it required to extend to very detail of the convict's crime. (*Ibid.*)

█ However, corroborative evidence need not be sufficient, aside from the admission, to establish the corpus delicti; but it is necessary to require the State to introduce substantial, independent evidence which would tend to establish the trustworthiness of the admission. (*Opper* v. *United States, supra* [99 L.Ed.].)

█ That such independent evidence was presented can not be denied. When the officer entered room 16, appellant "was running" his "hands through it. . . ." His testimony justified the inference that he had joined Cuevas in the "possession" of the "flowering tops and leaves." To the extent that a guest is to imbibe, smoke or otherwise consume or use merchandise, the guest is a possessor of the commodity. If a man invites a friend to visit his home in prohibition territory where possession of whiskey is forbidden by statute, the guest is destined to be arraigned for "possession" if law-enforcing officers enter the house and find the guest holding a pint of the poison. (See *United States* v. *Dibella,* 28 F.2d 805, 806; *De Gregorio* v. *United States,* 7 F.2d 295, 296.) In *People* v. *Williams,* 125 Cal.App.2d 838 [271 P.2d 145], Mrs. Miller was convicted of possession. She contended and her codefendant Williams stoutly maintained that the bag of 157 bindles of narcotic in his home belonged to him; that none of it belonged to her, "she was just counting them for me." He had told her he "was papering up heroin"; that she did not leave because he had taken the keys to her car; but that she had sat at the table where Williams was papering the heroin and had counted the papers into the bag. Mr. Justice Doran held that her contentions were not sustained. In *People* v. *Lama,* 129 Cal.App.2d 391 [276 P.2d 816], one Holder was at Lama's home when the police arrived. As the officers rang, Holder threw a bindle of heroin into a tub under the bed. He testified that he had taken the powder to the defendant to

learn whether it was heroin. He denied ownership at the time of the arrest. At the trial, Lama contended that there was no evidence from which it could reasonably be inferred that he had "immediate and exclusive dominion and control over the narcotic." Mr. Presiding Justice Shinn held that both Holder and Lama could have had possession of the drug. "Manifestly the court did not believe Holder's testimony. . . . Both could have been guilty of possession."

The testimony of appellant is of little value if the fact finder is not impressed thereby. Neither the declarations of his innocence to Officer Cook, nor his testimony in court have such sanctity as to require their acceptance as the ultimate fact. From the testimony, it · is clear that appellant had physical control of the sack of marijuana or, at least, of a part of its contents, and his intention to exercise such control was reasonably inferable. (*People* v. *Rumley*, 100 Cal. App.2d 6, 8 [222 P.2d 913].) ■ Appellant cannot escape conviction on the ground that the narcotic was not found in his room and was in room 16 and was brought there by Cuevas. Such argument was made by the appellant in *People* v. *Rodrigues*, 25 Cal.App.2d 393 [77 P.2d 503], because his codefendant "had rented the room and must be deemed in possession of everything found there." But the court held that "*exclusive* possession need not be shown where two or more parties are jointly charged." (Emphasis added.)

It would be a harsh rule to hobble the law-enforcing officers by requiring them to prove "exclusive possession" of every partner in a narcotic feast. By such a policy complete immunity against the conviction of many bold criminals could be made certain. The court had not only the facts of the invitation by Cuevas, the presence and service of whiskey by the women, the sudden appearance of the police and Cuevas' confession that the narcotic was his, and appellant's admission that he was helping Cuevas get it ready to roll, but it could and did consider appellant's inaction in not leaving the premises as soon as he was aware of Cuevas' possession of the contraband, Also, the court had the privilege of rejecting all the testimony of appellant in view of his obvious interest and of his prior conviction of a felony.

■ The rule of *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778], is applicable. The court had some substantial evidence as above recited. From it the inference of a guilt was fairly deducible. At least, it may not be said that "upon no hypothesis whatever is there sufficient substantial evidence

to support the conclusion reached by the court below.'' Because the evidence might also reasonably be reconciled with the innocence of appellant will not justify a reversal. (*Ibid.*)

Judgment affirmed.

Fox, J., concurred.

McComb, J., concurred in the judgment.