[Crim. No. 5327.   Second Dist., Div. Two.   July 27, 1955.]

THE PEOPLE, Respondent v. FRED WILLIAM
COLEMAN, Appellant.

595

Fred William Coleman, in pro. per., and Albert S. Friedlander, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Marvin Gross and Joan D. Gross, Deputy Attorneys General, for Respondent.

FOX, J.—A jury found defendant guilty of possession of heroin in violation of Health and Safety Code, section 11500. He appeals from the judgment of conviction and the order denying his motion for a new trial.

Defendant was the manager of a café and cocktail bar at 5th and Stanford Streets in Los Angeles at the time of the events hereinafter enumerated, and had been such manager for some 11 months. He was virtually in exclusive control of the place since the owner was employed elsewhere.

Police officers searched the café on April 28, 1954, and found both heroin and marijuana in such places as under the cushions, in the booths, behind the juke box and in the cigarette machine. They again searched the premises the following night and found marijuana cigarettes. On that occasion defendant handed the officers four marijuana cigarettes which he assertedly found. The officers advised defendant of the bad reputation the place had for narcotics and warned him it had to be cleaned up and that they were going to book the narcotics they had found "as evidence against the place." In response to the complaints of the officers, defendant told them he put a sign on the wall, "No marijuana cigarettes allowed in the bar."

On the evening of April 30 Police Officers Clago and Starkey had the café and defendant under surveillance for about half an hour starting at 10:45. Officer Clago observed defendant go to the rear of the café and unlock the door to the liquor storeroom. He entered, raised one hand up in the air and stepped right out again. He appeared to hand a white object—"a white piece of paper"—to a man nearby. The latter turned and started to leave by the front door. Defendant waved to him to leave by the rear door which opened on Stanford Street. He complied, leaving very rapidly. Officers attempted to apprehend him as he left the building, but he evaded them, ran and disappeared in the darkness. After defendant's arrest the officers asked him to open the liquor storeroom. He complied by taking a key out of his pocket and unlocking the door. He told the officers the day man had a key to this storeroom, but he was the only one there that night who had a key to it. There was testimony, however, that the owner had a key to this room; also, that a key was kept in the cash register for the use of employees in replenishing stock behind the bar and to enable delivery men to enter the stockroom. On searching that room Officer Starkey found a white object with a rubber band around it which consisted of nine bindles of heroin. This package was lying on a ledge above the entrance to the storeroom, in the approximate position that Officer Clago had observed defendant's hand disappear a few minutes earlier when he had unlocked this room and handed the person, whom he later directed to leave by the rear door, a package or white object. When these bindles were found one of the officers asked defendant, "What is this?" To which he replied that he did not know, and then added the observation that "someone must have pushed the bindles through the hole," referring to a small hole that went through the wall, and "hid them" there. The bindles, however, were about 5 inches from this hole. The ledge did not extend under the hole so that if the bindles were pushed through the hole they would fall directly to the floor; also, the officer noted the position they were in was farther from the hole than one could reach with his fingers, i.e., one could not put the bindles through the hole and place them on the 1 x 4 ledge 5 inches from the hole. The officers also searched the office, to which they were admitted by defendant's producing a key from his pocket and unlocking the door. There they found 10 white bindles wrapped with a rubber band in a cardboard box. These proved to contain heroin, too. De-

fendant disclaimed knowing what this package was and said "someone must have put it there." He acknowledged, however, that some tools, miscellaneous jewelry and Chinese novelties there in the office belonged to him.

A bartender who had worked for defendant testified that in January, 1954, just prior to his quitting, a person whom he did not know had approached him with what appeared to be bindles of heroin and asked him (the bartender) to keep the same for him. He refused the request. Defendant thereupon told the bartender that if he wanted to keep his job he would have to assist in giving protection to "pushers."[1]

Defendant contends that "the evidence is insufficient to sustain the verdict," on the ground that it fails to show that he had either knowledge or possession of the heroin. ■ A reviewing court must, of course, assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict. ■ Hence, before the verdict of a jury, which has been approved by the trial judge by the denial of a motion for a new trial, can be set aside on appeal upon the ground of the insufficiency of the evidence, "it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People v. Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) Applying these principles to the instant case, it cannot be said that the evidence and the reasonable inferences to be drawn therefrom are not, as a matter of law, sufficient to support the judgment. ■ As manager of the café and cocktail bar, defendant was virtually in exclusive charge of the premises since the owner was employed elsewhere. Defendant took pains to keep the liquor storeroom and the office locked even when he was on duty. While the day man and the owner had keys and there was apparently a key in the cash register to facilitate deliveries and the replenishment of the stock at the bar, it is clear that other employees had only limited access to either the supply room or the office, and that the public had no access to these portions of the premises. The testimony of Officer Clago that defendant unlocked the liquor storeroom, stepped inside, raised his hand in the air in the approximate position where a few minutes later nine bindles of heroin were found on the ledge, stepped out im-

---

[1] "Pushers" are narcotic peddlers.

mediately and handed a white object or piece of paper to another person whom he directed to leave by the rear door, justifies the inference that defendant delivered a bindle of heroin to this unknown party. The hasty and elusive departure of this person is not without significance, too. Defendant's suggestion that someone must have hidden the bindles on this ledge by pushing them through the small hole in the wall was, under the physical facts, utterly absurd. Finally, the testimony of the bartender indicated a disposition on the part of defendant to cooperate with narcotic peddlers who frequented the place, even to the point of keeping their contraband merchandise for them, temporarily. Thus the jury could reasonably infer that the defendant had dominion and control over the bindles the officers found. (*People* v. *Lama*, 129 Cal.App.2d 391, 393 [276 P.2d 816] ; *People* v. *Cuevas*, 131 Cal.App.2d 393, 398 [280 P.2d 831]), and had "knowledge of the narcotic character" thereof. (*People* v. *Candiotto*, 128 Cal.App.2d 347, 350 [275 P.2d 500].)

In this connection, defendant points out certain inconsistencies in the testimony of the officers and from that argues their testimony was untrue and should not have been believed by the jury. ■ There is no substance to this point because "conflicts and inconsistencies in the testimony of an individual witness are to be resolved by the trier of facts." (*People* v. *Frankfort*, 114 Cal.App.2d 680, 700 [251 P.2d 401] ; *People* v. *White*, 115 Cal.App.2d 828, 831 [253 P.2d 108].) ■ The judge or jury may accept as true a portion of the testimony of a witness and disbelieve the remainder, or have a reasonable doubt as to its correctness. (*People* v. *Hill*, 126 Cal.App.2d 378, 380 [272 P.2d 113].)

■ Defendant also claims that the testimony of the former bartender, Raleigh, was given under duress. Raleigh denied any duress as did Officer Clago, against whom the charge was made. No objection or motion to strike was made upon that ground. The evidence was properly received, and the voluntary character of this testimony was for the determination of the jury.

■ In a supplemental brief filed by court-appointed counsel,[2] it is argued that defendant's "constitutional rights and guarantees were violated in that evidence admitted and

---

[2]During the course of the appeal, defendant requested the court to appoint counsel to represent him. Thereupon Mr. Friedlander was so appointed.

used against him was obtained as a result of an unlawful search and seizure.'' The recent case of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905], is relied on. Counsel, however, fails to point to any specific facts which make the holding in the Cahan case applicable. This deficiency is understandable since the attempt to invoke the doctrine of the Cahan case in the instant matter is patently without merit. The Cahan case, reversing the tenor of California law, held that evidence obtained by police officers in violation of federal and state constitutional prohibitions against *unreasonable* search and seizure, is inadmissible. It does not purport to inhibit the right of law enforcement officers to conduct a *reasonable* search and seizure incident to a valid arrest.

Penal Code, section 836, provides that: ''A peace officer . . . may, without a warrant, arrest a person: (5) At night, when there is reasonable cause to believe that he has committed a felony.'' In view of what had transpired between defendant and the individual who subsequently fled detection on the night of April 30, when the officers had the premises under personal surveillance, the officers had reasonable cause for believing that defendant had committed a felony involving the sale or possession of narcotics. Hence, they were privileged to arrest defendant, at night, without a warrant, as was done. ''Thereafter, it was proper for them, as an incident to a lawful arrest, to search the premises and seize articles which they believed were being used by [him] . . . in the commission of the crime for which he was arrested.'' (*In re Dixon,* 41 Cal.2d 756, 761-762 [264 P.2d 513].) This was precisely the procedure followed in the case *sub judice*. The arrest was made upon probable cause following a lawful entry upon the premises; the search was made contemporaneously with the arrest; only the premises immediately involved were searched; and only contraband connected with the alleged crime was seized. There was thus a scrupulous avoidance of the unconstitutional transgressions on any fundamental individual right of defendant denounced by the Cahan case.

It is well settled that a search without a warrant is valid where it is incident to a lawful arrest, if it is reasonable and made in good faith; and that a seizure, during such a search, of evidence related to the crime is permissible. (*In re Dixon,* 41 Cal.2d 756, 761-762 [264 P.2d 513]; *Harris* v. *United States,* 331 U.S. 145, 151 [67 S.Ct. 1098, 91 L.Ed. 1399]; *United States* v. *Rabinowitz,* 339 U.S. 56, 61 [70 S.Ct. 430, 94 L.Ed. 653]; *McIntire* v. *United States,* 217 F.2d 663,

665]; *Agnello* v. *United States,* 269 U.S. 20, 30 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409].) In the case last cited, the court succinctly stated: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime, and to search the place where the arrest is made in order to find and seize things connected with the crime . . . is not to be doubted." There is nothing in the language, logic or rationale of the Cahan case, where the search and seizure was accomplished in violation of constitutional guaranties, which is in conflict with the above principle, which has prevailed not only in California and the federal courts, but in our sister states. (Annos.: 32 A.L.R. 680, 51 A.L.R. 424, 74 A.L.R. 1387 and 82 A.L.R. 782.)

The judgment and the order denying motion for a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 25, 1955.