[Crim. No. 6699.   Second Dist., Div. Two.   Oct. 15, 1959.]

THE PEOPLE, Respondent, v. WALTER THOMAS
TAYLOR, Appellant.

Walter Thomas Taylor, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was indicted for the possession of a narcotic (heroin) in violation of section 11500, Health and Safety Code. A jury having been duly waived, the defendant was found guilty by the court. His application for probation was denied and he was sentenced to the state prison for the term prescribed by law. He has appealed from the judgment and the sentence.

On the evening of September 27, 1958, Officer Aguirre, of the Los Angeles Police Department assigned to the Narcotics Division, and his partner, Sergeant Horstkotte, were driving west on Temple Street in an unmarked police car on a plainclothes assignment. They passed a certain café which was known as a "hangout" for narcotic users and peddlers. Officer Aguirre observed defendant talking to two known addicts in front of this café. The officer previously had questioned both of these men regarding the use of narcotics and one of them had been arrested by him on a narcotics charge.

The police car made a U-turn and parked near the front of the café. The three men saw Officer Aguirre and ran up a nearby alley, where defendant turned into the café through a side door. Officer Aguirre started up the alley but was called back when his partner saw defendant emerging from the front door of the café. Horstkotte and Aguirre stopped the defendant and identified themselves as police officers. As he stopped, the defendant started to place his right hand in his right, front pants-pocket but was warned to keep his hands out of his pockets and away from his sides. When defendant was asked his name and address he made a very fast move-

ment with his right hand into this pocket. At this point Aguirre grabbed defendant's wrist just at the trouser pocket, trapping his hand in the pocket. The officer asked defendant, "What do you have in your pocket?" The defendant replied, "Nothing." The officer then queried, "Are you sure about that? What are you trying to get out?" The defendant protested, "I have nothing." Thereupon Aguirre stated to defendant, "Well, I'll find out what you have in your pocket. I'll feel." To which defendant replied, "Go ahead."

While the defendant's hand was still partially in the pocket, being held there by the officer, the latter patted the outside and felt two small bundles inside the pocket. He asked the defendant what the objects in his pocket were, to which the defendant made no reply. He then inquired: "Is that junk you have in there?" Upon receiving no response, the officer said, "Well, then, we'll find out what you have there." The officer thereupon removed defendant's hand from his pocket and put his own hand into it and removed two small balloons therefrom and a vial containing 10 capsules of whitish powder. The officer then inquired of the defendant whether this was all the "stuff" he had, to which he replied, "That's all." The officer, however, continued the search of the defendant and found another balloon in his left front shirt pocket, which contained two capsules of whitish powder. As he was about to remove these two capsules from the pocket, the officer felt an object under his foot and as he looked down he saw another balloon on the sidewalk at the defendant's feet, which he had stepped on. The officer recovered it and, upon examination, discovered five mutilated capsules containing a powder similar to that found in the other capsules. At the time the officer removed the two balloons from the defendant's trouser pocket he noticed that there was a slit at the bottom of the pocket. Upon discovering the balloon on the sidewalk, the officer asked the defendant, "Did you push one of the balloons through the hole in the pocket?" The defendant replied, "Yes, I did." The defendant was then placed under arrest, the officers acting without a warrant. Chemical analysis disclosed that the contents of these capsules was heroin.

The defendant neither took the witness stand nor did he offer any evidence in his own behalf.

In seeking a reversal, defendant contends that (1) the search and seizure was illegal, and (2) his extrajudicial statements were inadmissible before the corpus delicti was established.

Penal Code, section 836, as amended in 1957, provides in part as follows: ''A peace officer may . . . without a warrant, arrest a person: . . . 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed.''

█ Reasonable cause is shown when a man of ordinary care and prudence, knowing what the officer knows, would be led to believe or conscientiously entertain a strong suspicion of the guilt of the accused. (*People* v. *Kilvington*, 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73]; *Bompensiero* v. *Superior Court*, 44 Cal.2d 178, 183 [281 P.2d 250]; *People* v. *Fischer*, 49 Cal.2d 442, 446 [317 P.2d 967].) Reasonable cause may exist even though there may be some room for doubt. (*People* v. *Nagle*, 25 Cal.2d 216, 222 [153 P.2d 344].)

█ Applying these principles to the facts at hand, it is clear that the officers had reasonable cause to believe that a felony had been committed and that the defendant was guilty thereof. The circumstance that the café was known by the officers to be a notorious hangout for narcotic violators was a circumstance to be taken into account in determining the reasonableness of the officers' action. (*People* v. *Rodriguez*, 140 Cal.App.2d 865, 869 [296 P.2d 38].) A further circumstance that properly could be considered on this question was the fact that defendant was in the company of two men who were known narcotic addicts and who previously had been questioned by Officer Aguirre regarding the use of narcotics and one of whom had been arrested by him on a narcotic charge. (*People* v. *Hollins*, 173 Cal.App.2d 88, 93 [343 P.2d 174].) It is particularly significant that upon recognizing the officers, when they parked in front of the café, the three men ran up an alley. From this sudden flight the officers could reasonably draw the inference that they were guilty of some crime. (*People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52].) When finally stopped by the officers the defendant made a motion toward his pants pocket. When asked for his name and address, defendant, by another quick movement, thrust his hand into the same pocket. This repeated, furtive action on the part of defendant, when coupled with the narcotic environment, could reasonably lead the officers to the conclusion that defendant had contraband in his pocket. When Officer Aguirre patted the outside of defendant's pocket he felt two small bundles. When asked whether this was ''junk,'' a slang term for heroin, defendant made no reply. Taking all these facts and circumstances into con-

sideration, the trial judge was abundantly justified in holding that the officers had reasonable cause to detain defendant and to search him and seize the contraband they found on his person. ■ Since the search and seizure was reasonable, the evidence which the officers uncovered was admissible. (*People* v. *Coleman,* 134 Cal.App.2d 594, 599 [286 P.2d 582] ; *In re Dixon,* 41 Cal.2d 756, 761-762 [264 P.2d 513].)

■ Defendant's contention that it was error to admit his extrajudicial statements before the corpus delicti was established is wholly lacking in merit. During the trial Officer Aguirre testified that he asked the defendant his name. At this point counsel for defendant objected to any extrajudicial statements until the corpus delicti had been established. The trial judge properly overruled this objection, pointing out that the order of proof is within the discretion of the trial court. (*People* v. *Crozier,* 119 Cal.App.2d 204, 207-208 [258 P.2d 1029] ; *People* v. *Seymour,* 54 Cal.2d 266, 275 [128 P.2d 726] ; *People* v. *Mehaffey,* 32 Cal.2d 535, 547-548 [197 P.2d 12].)

■ Since there is no appeal from the sentence (*People* v. *Gallardo,* 41 Cal.2d 57, 60 [257 P.2d 29]), the attempted appeal therefrom is dismissed.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.