[Crim. No. 6917.   Second Dist., Div. Two.   May 18, 1960.]

THE PEOPLE, Respondent, v. ERNESTO RODRIGUEZ et al., Defendants; LEO GONZALEZ, Appellant.

Ramon C. Grolock, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

HERNDON, J.—Appellant Gonzalez and one Rodriguez were jointly charged with possession of heroin. Rodriguez entered a plea of guilty. Appellant pleaded not guilty, waived a jury trial and stipulated that his cause might be submitted on the transcript of the proceedings at the preliminary hearing. Found guilty as charged, he appeals from the judgment and from the order denying his motion for a new trial.

Appellant's primary contention is that there was insufficient evidence to sustain the conviction for the reason that the room in which the arresting officers found narcotics and paraphernalia designed to facilitate the use thereof was not shown to have been under his dominion and control. Conceding that the incriminating evidence was found in his immediate presence, appellant nevertheless argues that his dominion and control over it was not sufficiently established.

A brief review of the record will suffice to show that the evidence was entirely sufficient to support the finding of the trial judge that appellant not only had dominion and control over the contraband, but that he was preparing to receive an injection of it into his arm at the time the officers entered the room.

On March 31, 1959, at about 3 p.m. Officers Burkland and Aguirre approached a women's rest room in Elysian Park in Los Angeles. They observed a person known as Ira Lamb standing outside. When Lamb saw the officers approaching he yelled something and ran. Officer Aguirre grabbed Lamb in a futile attempt to apprehend him. Officer Burkland immediately entered the rest room and observed Rodriguez fully dressed, seated on the last toilet bowl with his hands in the water.

Officer Burkland testified that he pulled Rodriguez off the toilet ". . . and inside of the toilet floating on the top of the water, I observed several pieces of balloon fragments and several pieces of gelatin fragments, appearing to be portions of a number 5 gelatin capsule or capsules. . . . [A]t the bot-

tom of the toilet bowl itself, inside of the toilet bowl, was what appeared to be an aluminum measuring spoon. On the concrete floor, about an inch and a half or two inches away from the toilet itself, I observed a gelatine capsule filled with a whitish powder, along with an old piece of rag of some sort, possibly an old handkerchief. I took Rodriguez away from the toilet and on the window ledge near a wash basin, which was directly across from the toilet itself, I observed an eye dropper filled with a muddy sort of liquid. . . . There were several pieces of a rubber band and a portion of a match book cover.''

When Officer Burkland entered the rest room, appellant was standing only 1 or 2 feet from the window ledge on which the eye dropper, rubber bands, and so forth, were observed. He was standing some 4 or 5 feet away from Rodriguez. He immediately proceeded to leave the room as Officer Burkland entered. Officer Aguirre on the outside saw appellant as he ran out through the door of the women's rest room.

Officer Burkland testified from his 10 years of experience as an officer attached to the Narcotics Division that ''[t]he eye dropper is what is used in conjunction with a Number 26 hypodermic needle to inject heroin into the veins of an addict. The spoon is used usually to cook heroin up, prior to the injection. The rag or handkerchief is used to tie the arm so as to cause the vein to swell so the needle may be injected into the vein. The match book cover is quite frequently used to wrap the hypodermic needle in when it is not in use.''

The officers testified to conversations with appellant and with Rodriguez both in the police car and at the police building. Appellant is quoted as making free and voluntary admissions that he, Rodriguez and Lamb had ridden up to the park together in a certain Buick automobile and that appellant ''was going to fix a few drops from the dripper and pay the man later on in the day, as he had some money coming.'' The quoted statements of appellant were most reasonably construed as indicating that he and his two companions were jointly in possession of the narcotics and were actively preparing to use them when they were surprised by the officers.

An examination of appellant's arms showed old scar tissue present. It was stipulated that the capsule recovered by the officers from the immediate presence of appellant and Rodriguez in the rest room was the same capsule as that mentioned in the chemist's report. According to the chemist's report, the capsule contained heroin.

It is not necessary to a conviction that the accused be shown to have had the exclusive possession of a supply of narcotics. (*People* v. *Cuevas,* 131 Cal.App.2d 393, 398 [280 P.2d 831].)  Two or more persons may be so closely associated in the handling of a narcotic that their possession of it may be joint. (*People* v. *Basco,* 121 Cal.App.2d 794, 796 [264 P.2d 88]; *People* v. *Lama,* 129 Cal.App.2d 391, 393-394 [276 P.2d 816].)

In the instant case, the trial judge was abundantly justified in concluding that the heroin found in the immediate presence of appellant had been taken into the rest room for the joint use of appellant and Rodriguez. Appellant's admissions and his furtive conduct, coupled with the other circumstantial evidence which we have briefly summarized, constitute unquestionably sufficient evidence of guilt.

Appellant's second major contention is that the trial court abused its discretion in denying his motion for a new trial. Apart from the repeated argument with reference to the sufficiency of the evidence, the principal basis for this second contention is that the trial court erred in failing to require the production at the trial of tape recordings of conversations between the police officers and appellant in which the latter made self-incriminating admissions.

This assignment of error is of no avail for the reason that appellant made no timely demand for the production of the tape recordings. During the cross-examination of Officer Aguirre, defendant's counsel inquired whether a tape recording of the conversations had been made and the officer answered in the affirmative. When asked whether the recording was in court, the witness stated: "It is not in court. I have it at the police building and it is available." Counsel thereupon dropped the matter of tape recordings and made no further reference to them during the trial except that in the course of a discussion with the court at the conclusion of the oral arguments counsel observed: "There is supposed to be a tape recording of the conversation had. I am not trying to hold to the best evidence rule, but I think that tape recording should have been here in court." Manifestly, this comment by way of argument did not constitute a timely demand for the production of the recording. Indeed, it was not a demand at all.

At the hearing on the motion for a new trial, counsel for appellant mistakenly stated that the officers had testified that they had no tape recording. The ensuing discussion indicates

that both the court and counsel had forgotten Officer Aguirre's testimony that the tape recordings were available. The court stated, however, that if there were tape recordings and if appellant had requested their production, such request unquestionably would have been granted.

The mistaken comments of court and counsel during the arguments on the motion for new trial concerning the state of the record in this regard were a matter of no legal consequence whatsoever. There was nothing in the situation that afforded any semblance of a ground for a new trial.

Appellant's final contention is that he was denied due process of law. The basis for this contention appears to be the argument that at the time of hearing appellant's motion for a new trial the trial judge betrayed his lack of a sufficient "independent recollection" of the evidence. We find no merit in this argument. The record indicates that appellant was accorded a full and complete hearing of his motion for a new trial and that the trial judge gave it careful and conscientious consideration. There is no showing that defendant was denied due process of the law or that prejudicial error was committed at any stage of the proceedings.

Judgment and order affirmed.

Fox, P. J., and Ashburn, J., concurred.