[Crim. No. 7556. Second Dist., Div. One. Oct. 31, 1961.]

THE PEOPLE, Respondent, v. ESTELLE JACOBS, Appellant.

Harold E. Weiss and Daniel N. Busby for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Felice R. Cutler, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from the judgment and a purported appeal from the sentence in a proceeding wherein the appellant was convicted of possession of heroin.

In an information filed in Los Angeles County on July 5, 1960, the defendant was charged with possession of heroin on or about May 17, 1960; further it was charged that the defendant, on or about August 30, 1956, in the county of Los Angeles, had been convicted of a violation of section 11500 Health and Safety Code (possession of heroin).

The defendant pleaded not guilty and denied the prior conviction. A jury trial was waived and by stipulation the matter was submitted upon the transcript of the testimony taken at the preliminary hearing and the added testimony of a police officer.

The record discloses that the prosecution introduced into evidence the file in the previous case which contained the judgment clearly and unequivocally setting forth that the defendant had been previously convicted of possessing heroin as charged. The probation officer's report in the case at bar, which the judge indicated he had read, shows specifically on its face the facts with reference to the previous offense, namely that the officers found six (6) bindles of heroin in defendant's purse and the sentence therefor (90 days in the county jail and three years probation). In spite of the record in this case the judge, for some unknown or at least unexpressed reason, saw fit to disregard the law made and provided for in such cases in that he did not find whether or not the defendant had suffered such previous conviction. (See Pen. Code, § 1158.) The defendant was thereupon sentenced as a first offender.

A résumé of some of the facts in the present case are as follows: A police officer (Grennan) of the narcotics division had information that the defendant previously had been arrested for and convicted of the possession of heroin. Approximately one week prior to the arrest of the defendant, the officer told Sergeant Burland of the narcotics detail that defendant "was still continuing with the narcotics traffic." Grennan had received information concerning the activities

of defendant from two persons. One of the persons was an informer known to the officer for approximately two years and from whom the officer had received information with reference to narcotic matters on a previous occasion. Grennan had also had previous contact with the other informer. The officer was advised that defendant "would not deal just to anyone. That there was one person, Hazel Craig, and she would be the one who would have to go to this defendant to purchase heroin, she or her common law husband."

On May 17, 1960, Officers Grennan and Hanks were conducting a narcotics investigation. They arrived at the defendant's residence about 2 p.m. Grennan saw defendant standing just inside the gate to her property. The officer identified himself as a police officer and stated that he would like to speak with her. The defendant thereupon opened the gate and invited the officers into her home. After they were in the house for a short time Sergeant Hanks asked the defendant what she had in her right hand. The defendant did not provide an answer but got up very hurriedly, went to the bathroom, threw the object which she had in her hand into the toilet bowl and moved the mechanism to flush the toilet. Grennan's experience on the narcotics squad led him to believe that the throwing of an object into a toilet bowl "is a very common manner of which to dispose of contraband" such as narcotics. Grennan searched into the bowl and retrieved the object which defendant had thrown in. The container held five bindles of heroin. The officer said that the defendant stated that she had just received "this stuff" (knowing it was a narcotic) and was going to deliver it to someone else, but that she was not a peddler. She further stated that she got scared when the officer inquired about what she had in her hand and that was the reason she tried to flush "the stuff" down the toilet.

The appellant now contends that the evidence was unlawfully obtained and that therefore the conviction cannot stand. We find no merit to any of the contentions of appellant.

■ The appellant opened the gate to her property and invited the officers into her house. There is nothing in the record to indicate or show that appellant submitted to any assertion of authority by the police, or that the officers demanded or requested that they be admitted into appellant's home. The appellant saw fit to fail to give her version of what occurred or what she thought at the time of the entry. It is not unreasonable for the police to seek an interview with

a suspect or witnesses or to call upon such persons at their homes for such purposes. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852] ; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855] ; see also *People* v. *Soto,* 144 Cal.App.2d 294, 298 [301 P.2d 45] ; *People* v. *Harris,* 146 Cal.App.2d 142, 145 [304 P.2d 178] ; *People* v. *Anders,* 167 Cal.App.2d 65, 67 [333 P.2d 854] ; *People* v. *Brajevich,* 174 Cal.App.2d 438, 444 [344 P.2d 815].)

What the officers saw in the appellant's house justified a belief that a public offense was being committed in their presence. The right to break down barriers to save evidence from destruction is recognized. (*People* v. *Ruiz,* 146 Cal. App.2d 630, 634 [304 P.2d 175] ; *People* v. *White,* 167 Cal. App.2d 794, 798 [334 P.2d 963] ; *People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6] ; *People* v. *Rollins,* 161 Cal.App.2d 560, 563 [326 P.2d 938].)

As stated in *People* v. *Williams,* 175 Cal.App.2d 774, 776 [1 Cal.Rptr. 44] : ". . . Bathrooms have been used so frequently as the means of making intoxicating liquor disappear, and successfully concealing the presence of other contraband articles, that police officers, who are at the door of a place where they have reason to believe that narcotics are to be had, act reasonably in forcing their way in, when the noise within led them to believe that the evidence they sought was being destroyed. No two situations are identical, but for comments on situations with similar elements, see: *People* v. *Maddox* (1956), 46 Cal.2d 301, 306 [294 P.2d 6, 9] ; *People* v. *Ruiz* (1956), 146 Cal.App.2d 630, 634 [304 P.2d 175, 177] ; and *People* v. *White* (1959), 167 Cal.App.2d 794, 798 [334 P.2d 963, 965]."

There was no evidence of any show of force or coercion by the police in this case.

Appellant complains that there was no probable cause for the search and seizure because the police failed to reveal the identity of the informers and to prove their reliability. Even if the informers were not identified and named, there was enough evidence in this case to affirm the judgment. The appellant invited the officers into her house and her actions, when the officers were in the house, brought about her arrest. (*People* v. *Williams, supra,* 175 Cal.App.2d 774, 776.)

The search and seizures were reasonable and the evidence was admissible under the circumstances. (*People* v. *Taylor,* 174 Cal.App.2d 448, 452 [344 P.2d 837] ; *People* v. *Coleman,*

134 Cal.App.2d 594, 599 [286 P.2d 582]; *In re Dixon*, 41 Cal.2d 756, 761-762 [264 P.2d 513].)

█ There is no appeal from the sentence. (*People* v. *Gallardo*, 41 Cal.2d 57, 60 [257 P.2d 29]; *People* v. *Taylor*, *supra*, 174 Cal.App.2d 448, 452.)

The judgment is affirmed.

Wood, P.J., concurred in the judgment.

Lillie, J., concurred in the judgment only.